**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KYLE EUGENE GORDON,** | **:** | |
| **Petitioner** | **:** | |
| | **:** | **No. 1:20-cv-2419** |
| **v.** | **:** | |
| | **:** | **(Judge Rambo)** |
| **WARDEN OF** | **:** | |
| **FCI-SCHUYLKILL,** | **:** | |
| **Respondent** | **:** | |

# MEMORANDUM

On December 23, 2020, *pro se* Petitioner Kyle Eugene Gordon ("Petitioner"), who is currently incarcerated at the Federal Correctional Institution Schuylkill in Minersville, Pennsylvania ("FCI Schuylkill"), initiated the above-captioned case by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. No. 1) and a memorandum in support thereof (Doc. No. 2). Petitioner challenges the Bureau of Prisons ("BOP")'s calculation of his sentence, asserting that he is entitled to 19 months of prior custody credit and immediate release. Petitioner paid the requisite filing fee on January 13, 2021. Following an Order to show cause (Doc. No. 8) and after receiving an extension of time (Doc. Nos. 11, 12), Respondent filed a response on February 10, 2021 (Doc. No. 13). Petitioner filed a traverse on February 25, 2021. (Doc. No. 14.) Accordingly, Petitioner's § 2241 petition is ripe for disposition.

## I. BACKGROUND

On May 1, 2014, Petitioner was arrested in Chambersburg, Pennsylvania, for selling heroin. (Doc. No. 13-1 at 3.) He was "returned to state custody as a pending parole violator from [Pennsylvania] Case Numbers 1517-2006 and 2221-2006." (*Id.*) On July 23, 2014, while in state custody, Petitioner was charged with possession with an intent to distribute a controlled substance, criminal use of a communication facility, possession of a firearm prohibited, and possession of drug paraphernalia. (*Id.* at 4.) These charges were ultimately *nolle prossed* on December 16, 2015 in favor of federal prosecution. (*Id.*)

On December 15, 2015, Petitioner appeared before this Court via a writ of habeas corpus *ad prosequendum* to make an initial appearance in Case Number 1:15-cr-264. (*Id.*) That same day, the United States Marshals Service returned Petitioner to state authorities. (*Id.*) On July 27, 2016, Petitioner was again temporarily loaned to federal authorities via a writ to make an appearance for Case Number 1:15-cr-264. (*Id.*) Petitioner was returned to state authorities the same day. (*Id.*) On June 9, 2017, Petitioner appeared before the undersigned via a writ, and the undersigned sentenced him to 75 months' incarceration for conspiracy to distribute heroin and possession of a firearm in furtherance of drug trafficking. (*Id.* at 4, 9, 20-21.) The undersigned ordered that Petitioner's federal sentence "run consecutive to the anticipated state parole revocation terms for Case Numbers 1517-2006 and 2221-

2006." (*Id.* at 4, 21.) On June 16, 2017, Petitioner was returned to state custody and the federal judgment was lodged as a detainer with the Pennsylvania Department of Corrections. (*Id.* at 4.)

On May 15, 2018, the undersigned amended Petitioner's federal sentence to order that it run concurrent with Pennsylvania Case Numbers 1517-2006 and 2221-2006. (*Id.* at 4, 25-26.) On February 5, 2020, Petitioner was paroled from state custody to exclusive federal custody pursuant to the detainer. (*Id.* at 4, 28.) Petitioner received 1,141 days of credit towards his parole recommitment, from May 1, 2014 through June 15, 2017. (*Id.* at 4.) The BOP calculated Petitioner's sentence based on a 75-month term commencing on June 14, 2017, the date it was imposed, "thereby granting him a Nunc Pro Tunc, retroactive designation, designating the state facility for service of the concurrent federal term." (*Id.*) Petitioner did not receive prior custody credit toward his federal sentence because all custodial time had been credited toward his state term. (*Id.* at 4-5.) Petitioner's current projected release date, with good conduct time, is October 11, 2022. (*Id.* at 5, 10.)

In his § 2241 petition, Petitioner maintains that he is entitled to 19 months of prior custody credit toward his federal sentence. (Doc. No. 1.) He seeks credit from November 3, 2015 until June 14, 2017. (*Id.* at 8.) Petitioner asserts that if he received this credit, he would be entitled to immediate release. (*Id.*) In his memorandum in support of his § 2241 petition, he suggests that this time was not

credited toward his parole violation term. (Doc. No. 2 at 2.) Petitioner filed an informal administrative remedy seeking such credit on June 12, 2020. (Doc. No. 1 at 14.) His informal remedy was denied. (*Id.* at 14-15.) Petitioner then submitted a BP-9, the next level of review, to the Warden, on August 25, 2020; however, it was rejected for being illegible. (*Id.* at 16.) Petitioner suggests that he was time-barred from pursuing further administrative remedies because he did not receive the BP-9 response until September of 2020. (Doc. No. 2 at 2.)

## II. DISCUSSION

Respondent asserts that Petitioner's § 2241 petition should be dismissed because: (1) Petitioner failed to exhaust his administrative remedies; and (2) the BOP properly computed Petitioner's sentence. (Doc. No. 13 at 5.) The Court considers each argument in turn below.

### A. Exhaustion of Administrative Remedies

While § 2241 does not contain an explicit statutory exhaustion requirement, the United States Court of Appeals for the Third Circuit has consistently required a petitioner to exhaust his administrative remedies before filing a § 2241 petition. *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion is required "for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies

the opportunity to correct their own errors fosters administrative autonomy." *Id.* at 761-62 (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)). Thus, "a federal prisoner who . . . fails to exhaust his administrative remedies because of a procedural default, and subsequently finds closed all additional avenues of administrative remedy, cannot secure judicial review of his habeas claim absent a showing of cause and prejudice." *Id.* at 762. Exhaustion, however, is not required when it would not promote these goals, such as when exhaustion would be futile. *See, e.g.*, *Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998).

The BOP has a multi-step administrative remedy program allowing an inmate "to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). First, an inmate should attempt inform resolution of the issue with the appropriate staff member. *Id.* § 542.13(b). If informal resolution is unsuccessful, the inmate may submit a formal written grievance, using the BP-9 form, to the Warden within twenty (20) calendar days "following the date on which the basis for the Request occurred." *Id.* § 542.14(a). The Warden is to respond to the request within twenty (20) calendar days. *Id.* § 542.18. An inmate dissatisfied with the Warden's response may appeal, using the BP-10 form, "to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." *Id.* § 542.15(a). Finally, an inmate may appeal the Regional Director's response, using the BP-11 form, to the BOP's

General Counsel "within 30 calendar days of the date the Regional Director signed the response." *Id.* These time limits may be extended "[w]hen the inmate demonstrates a valid reason for delay."[1] *Id.*

The record reflects that Petitioner filed an informal administrative remedy seeking prior custody credit on June 12, 2020. (Doc. No. 1 at 14.) His informal remedy was denied. (*Id.* at 14-15.) Petitioner then submitted a BP-9, the next level of review, to the Warden, on August 25, 2020; however, it was rejected for being illegible. (*Id.* at 16; Doc. No. 13-1 at 34.) Petitioner did not pursue his remedy further.

Petitioner suggests that he was time-barred from pursuing his administrative remedies further because he did not receive the BP-9 response until September 10, 2020, past the deadline for receiving a response. (Doc. No. 14 at 1.) However, the administrative remedy program explicitly provides that "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18. Thus, if Petitioner had not received a response to his BP-9 within twenty (20) days of August 25, 2020, he was entitled to consider it denied and continue to

[1] Valid reasons for delay include, but are not limited to: "an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under § 542.19 . . . was delayed." 28 C.F.R. § 542.14(b).

pursue his remedies by appealing to the Regional Director. Nothing in the record, however, suggests that Petitioner did so.[2] Moreover, even if Petitioner thought further pursuit would be futile, "[c]ourts in the Middle District of Pennsylvania have consistently held that 'exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates he will be unsuccessful in his administrative appeals.'" *Ross v. Martinez*, No. 4:09-cv-1770, 2009 WL 4573686, at *3 (M.D. Pa. Dec. 1, 2009) (quoting *Malvestuto v. Martinez*, No. 1:09-cv-1339, 2009 WL 2876883, at *3 (M.D. Pa. Sept. 1, 2009)); *see also Suarez-Sanchez v. Lane*, No. 4:18-cv-1431, 2019 WL 1645231, at *3-4 (M.D. Pa. Mar. 5, 2019) (concluding that petitioner's § 2241 petition was subject to dismissal for failure to exhaust because the petitioner "never fully and properly appealed [his] grievance because he apparently deemed the grievance process to be a waste of time"), *Report and Recommendation adopted*, 2019 WL 1620339 (Apr. 16, 2019). Thus, the Court agrees with Respondent that Petitioner's § 2241 petition must be dismissed for

[2] The Court recognizes that the Third Circuit recently held that "as soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable." *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019). Subsequently, the Third Circuit concluded, in a civil rights action filed by a federal inmate, that the inmate had fully discharged the exhaustion requirement when a staff member failed to respond to his requests for informal resolution. *See Millhouse v. Heath*, 815 F. App'x 628, 631 (3d Cir. 2020). The Third Circuit explicitly noted that the "regulatory presumption that a non-response acts as a denial, [as set forth in] 28 C.F.R. § 542.18, [does not] apply to informal resolution." *Id.* Thus, even if Petitioner did not receive a response to his BP-9 until more than twenty (20) days had passed, such a non-response would entitle him to deem it denied, which "would trigger additional exhaustion obligations." *Id.*

failure to exhaust his administrative remedies. Nevertheless, the Court will address the merits of his petition below.

**B. Computation of Petitioner's Sentence**

The Attorney General is responsible for computing federal sentences for all federal offenses committed after November 1, 1987. 18 U.S.C. § 3585; *United States v. Wilson*, 503 U.S. 329, 331-32 (1992). The Attorney General has delegated this authority to the Director of the BOP. 28 C.F.R. § 0.96. The process of computing a federal sentence is governed by 18 U.S.C. § 3585 and consists of two (2) steps: (1) a determination of the date on which the federal sentence commences, and (2) consideration of any credit to which the inmate may be entitled. *See Chambers v. Holland*, 920 F. Supp. 618, 621 (M.D. Pa. 1996).

With respect to the date on which a federal sentence commences, section 3585(a) provides that the sentence commences "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). A federal sentence cannot commence earlier than the date on which it was imposed. *See Rashid v. Quintana*, 372 F. App'x 260, 262 (3d Cir. 2010) (citing *United States v. Labeille-Soto*, 163 F.3d 93, 98 (2d Cir. 1998)). Here, the BOP calculated Petitioner's sentence as commencing on June 14, 2017, the date it was imposed, thereby granting him a *nunc pro tunc* retroactive designation

consistent with the undersigned's intent when Petitioner's federal sentence was amended to be concurrent with his state term. (Doc. No. 13-1 at 4.); *see Prescod, Jr. v. Schuylkill*, 630 F. App'x 144, 147 (3d Cir. 2015).

As noted *supra*, Petitioner seeks 19 months of prior custody credit, from November 3, 2015 until June 14, 2017. Credit for time spent in custody prior to the commencement of a federal sentence is controlled by 18 U.S.C. § 3585(b), which states:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. § 3585(b).

When two (2) different sovereigns have custody of a criminal defendant over time, the general rule is that the sovereign who acquires custody first in time has primary jurisdiction over the defendant. *See Chambers*, 920 F. Supp. at 622. Thus, "[p]roducing a state prisoner under writ of habeas corpus ad prosequendum to answer federal charges does not relinquish state custody." *Id.* Therefore,

> [t]ime spent in custody under a writ of habeas corpus from non-federal custody will not in and of itself be considered for the purpose of crediting sentence time. The primary reason for 'writ' custody is not the federal charge. The federal court merely 'borrows' the prisoner under the provisions of the writ for secondary custody.

*Hester v. Lane*, No. 3:18-cv-936, 2019 WL 5692769, at *2 (M.D. Pa. Nov. 4, 2019) (quoting BOP Program Statement 588.28, *Sentence Computation Manual*).

Here, during the period for which Petitioner seeks prior custody credit, he was in state custody and was borrowed from that custody by the United States Marshals Service via a writ of habeas corpus *ad prosequendum* to appear before this Court for his federal charges. Moreover, Petitioner received 1,141 days of credit toward his parole violation term, from May 1, 2014 (the day of his arrest), through June 15, 2017. (Doc. No. 13-1 at 4.) Thus, because that time was credited toward Petitioner's state sentence, he cannot now again receive credit for the period from November 3, 2015 through June 14, 2017 toward his federal sentence. *See* 18 U.S.C. § 3585(b); *Wilson*, 503 U.S. at 337 (noting that "Congress made clear that a defendant could not receive double credit for his detention time").

In his traverse, Petitioner argues that he is entitled to his credit because the undersigned ordered that he have a "fully concurrent sentence." (Doc. No. 14 at 2.) He asserts that because of this, "credit should start from [the] indictment date, Nov[ember] 3, 2015." (*Id.*) However, as noted *supra*, a federal sentence cannot commence earlier than the date on which it was imposed. *See Rashid*, 372 F. App'x

at 262 (citing *Labeille-Soto*, 163 F.3d at 98). Moreover, although Petitioner asserts that it is irrelevant that he received credit towards his parole violation because his federal sentence was run concurrently (Doc. No. 14 at 2), Petitioner cannot receive double credit for his time in detention between November 3, 2015 and June 14, 2017. *See Wilson*, 503 U.S. at 337. Petitioner, therefore, is not entitled to the credit that he seeks toward his federal sentence.

## III. CONCLUSION

Based on the foregoing, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. No. 1) will be denied. An appropriate Order follows.

/s Sylvia H. Rambo
United States District Judge

Dated: March 1, 2021